## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

MELANIE CLANTON O'BRYAN

    Plaintiff,

vs                                       CASE NO: 6:21-cv-1260

TRACTOR SUPPLY COMPANY

    Defendant

_____ )

### PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW Plaintiff, MELANIE CLANTON O'BRYAN, (hereinafter "Plaintiff") and files her Complaint against Defendant, TRACTOR SUPPLY COMPANY (hereinafter "Defendant"), and in support she states the following:

### NATURE OF THE CLAIMS

1.    This is an action for monetary damages pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the Florida Civil Rights Act of 1992. Ch. 760, Fla. Stat. (1999) ("FCRA"), and Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. §§ 12101 et seq. ("ADA") to redress Defendant's unlawful employment practices against Plaintiff including discrimination, sexual harassment, and retaliation because of her sex and disability leading to Plaintiff's unlawful termination.

1

## JURISDICTION AND VENUE

1. This Court has jurisdiction of the claims herein pursuant to 28 U.S.C. §§ 1331 and 1343, as this action involves federal questions regarding deprivation of Plaintiff's civil rights under Title VII and the ADA.

2. This Court has jurisdiction over Plaintiff's FCRA claims based upon its supplemental jurisdiction pursuant to 28 U.S.C. §§ 1367, as they arise out of the same core nucleus of operative facts.

3. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including Defendant's unlawful employment practices alleged herein, occurred in this District in Brevard County, Florida.

## THE PARTIES

4. Plaintiff is a citizen of the United States, and was at all times material, a resident of the state of Florida, residing in Brevard County.

5. Defendant is a foreign for-profit corporation with its principal place of business in Brentwood, Tennessee.

6. Defendant is registered to do business in the state of Florida and maintains and operates locations throughout the state of Florida, thereby subjecting itself to the jurisdiction of this Court.

7. Plaintiff worked for Defendant at the 801 Dixon BLVD, Suite 1100, Cocoa, FL 32922 location, and is an employee as defined by all laws under which this action is brought.

8. Defendant is an employer as defined by all laws under which this action is brought, and Defendant is a national retailer that employs substantially more than the requisite number of employees required by all laws under which this action is brought.

## PROCEDURAL REQUIREMENTS

9. Plaintiff has complied with all statutory prerequisites prior to filing this action.

10. On October 3, 2019, Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5, et seq., based upon sexual harassment, sex-based discrimination, and retaliation (hereinafter referred to as "First Charge").

11. On July 8, 2020, Plaintiff dual-filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR"), against Defendant, satisfying the requirements of 42 U.S.C. § 2000e-5, et seq., based on disability, sexual harassment, sex-based discrimination, and retaliation (hereinafter referred to as "Second Charge").

12. Each of Plaintiff's charges were filed within three hundred days of the respective unlawful employment practices.

13. On May 7, 2021, the EEOC issued to Plaintiff a Dismissal and Notice of Rights as to her First Charge.

14. On June 3, 2021, the EEOC issued to Plaintiff a Dismissal and Notice of Rights as to her Second Charge.

15. Plaintiff's Complaint was filed within ninety days following her receipt of both of the EEOC's Dismissals and Notices of Rights.

16. The Florida Commission on Human Relations failed to conciliate or determine whether there was reasonable cause on Plaintiff's First Charge within 180 days of the Plaintiff filing the aforementioned charge.

## FACTUAL ALLEGATIONS

17. On or about December 5, 2012, Plaintiff began working full-time for Defendant and was employed as a cashier.

18. Plaintiff proved to be an exceptional employee, receiving glowing annual reviews and receiving various awards for her service.

19. Plaintiff was promoted to Team Lead, and by 2016, Plaintiff became an Assistant Store Manager.

20. In fact, Plaintiff was informed by the Defendant that she would become the store manager on or about January of 2020, when her current store manager, Cheryl Hornsby, moved to a different location.

21. Beginning in February 2018, Sean Horn, a receiver and inventory control specialist employed by the Defendant, began engaging in inappropriate sexual behavior toward Plaintiff, including affectionately rubbing Plaintiff's arm, caressing her hair, and intentionally and unnecessarily rubbing up against her.

22. Plaintiff was visibly uncomfortable and unreceptive to Mr. Horn's inappropriate touching and asked him to cease the unwanted behavior.

23. At or around late September 2018, Mr. Horn's workplace affections became overt when he attempted to engage the Plaintiff in an outside of work relationship, advising her that he had romantic feelings for her.

24. Plaintiff immediately and unequivocally rejected his advances, informing him that she was his supervisor and would never engage in a romantic or sexual relationship with a subordinate.

25. Mr. Horn offered to quit his employment with the Defendant to facilitate his desired romantic relationship.

26. Plaintiff once again rebuffed Mr. Horn's inappropriate workplace advances, advising him that she was not interested in him, and no romantic relationship would ever form between them.

27. Immediately following this conversation, Plaintiff reported the sexual harassment to her supervisor, Cheryl Hornsby.

28. Following the Plaintiffs complaint, Ms. Hornsby took no cognizable remedial action for the ensuing month.

29. During that month, Mr. Horn was undeterred and repetitively made advances on the Plaintiff, harassing her and insisting their relationship could be purely sexual in nature; more than once, Mr. Horn proposed an arrangement whereby they could be "friends with benefits."

30. Plaintiff continued to report to Ms. Hornsby that Mr. Horn's inappropriate sexual propositions had continued.

31. As a result of Plaintiff's continued complaints, Ms. Hornsby called a meeting among the three of them.

32. Immediately thereafter, Mr. Horn began to demean, disrespect, ostracize, humiliate, undermine, bully, yell at, argue with, and be verbally combative with the Plaintiff.

33. Mr. Horn's hostility toward the Plaintiff immediately following the meeting was a complete juxtaposition of his previous attempts to court her and initiate a sexual relationship.

34. Mr. Horn's continued, repetitive, and escalating combative behavior was so extreme Plaintiff no longer felt safe alone in the workplace with him.

35. Because Mr. Horn's behavior made the workplace untenable, Plaintiff asked Ms. Hornsby to escalate her complaints to the District Manager, Steve Holliday.

36. Ms. Hornsby and Mr. Holliday failed to take appropriate action to address the hostile work environment caused by Mr. Horn.

37. Remarkably, instead of remedying the hostile work environment for the Plaintiff, Mr. Holliday insisted the Plaintiff and Mr. Horn just needed "bonding time."

38. In 2019, Mr. Horn was placed on leave because of a workplace injury.

39. During Mr. Horn's leave, Plaintiff informed Mr. Holliday that (1) Mr. Horn's combative behavior was a direct response to Plaintiff rejecting his sexual advances; (2) since Mr. Horn had been on leave, Plaintiff's work environment had

6

improved; and (3) that she did not want Mr. Horn to return from leave and be scheduled to work with her.

40. Without making any inquiry into the veracity of Plaintiff's protected complaint, Mr. Holliday dismissed Plaintiff's concerns and told her, "(Mr. Horn) would not bite the hand that feeds him."

41. Instead of taking action to remedy the hostile work environment, Mr. Holliday insisted the Plaintiff endure Mr. Horn's harassment so the Defendant could develop well-documented incidents of policy violations prior to taking an adverse action against him. Or as Mr. Holliday put it, "Sometimes we gotta' take a little shit to get good paperwork."

42. Mr. Horn returned from leave and immediately resumed his severe and pervasive workplace harassment.

43. On or about August 7, 2019, Mr. Horn accosted the Plaintiff with a raised voice while at the service desk, insulting her leadership and management skills, telling her how to perform her duties, telling her the other employees do not care about their duties, and accusing her of not knowing how to get things done.

44. Mr. Horn yelled at the Plaintiff for several minutes, causing the Plaintiff to become worked up into an emotional state.

45. As soon as the first co-worker arrived that morning, Mr. Horn boasted how he was able to evoke a vulnerable emotional response out of the Plaintiff.

46. Plaintiff immediately reported the incident to Ms. Hornsby, advising that Mr. Horn was continuing to behave in a hostile manner and that she was in fear of her job.

47. Ms. Hornsby chastised the Plaintiff, saying to her that Plaintiff's thoughts were inconsistent with being an assistant store manager, adding that the Plaintiff should just stop letting Mr. Horn get to her.

48. Plaintiff attempted to escalate her complaints to corporate by contacting the new district manager, Ralph Herrera.

49. Ms. Hornsby discouraged this action by saying, "No you don't call Ralph (Herrera), we need to report to hr". [sic]

50. However, Ms. Hornsby did not report the matter to HR.

51. Shockingly, Ms. Hornsby then instructed the Defendant's staff that they were not allowed to provide any witness statements corroborating the Plaintiff's complaints of workplace harassment.

52. Because it became clear to the Plaintiff that the matter was intentionally being covered up, Plaintiff reported the matter directly to the new district manager, Mr. Herrera.

53. Mr. Herrera provided the Plaintiff with a number to human resources, and on August 16, 2019, Plaintiff filed a formal written complaint regarding Mr. Horn's sexual harassment and retaliation as well as the hostile work environment created by his behavior.

54. Contained in that complaint was the following:

    a. Timeline of events detailing Mr. Horn's sexual harassment, solicitation, retaliation, and creation of a hostile work environment;

    b. a firsthand witness statement from Patricia Richmond (who intentionally defied Ms. Hornsby's instruction not to provide a witness statement), corroborating Plaintiff's allegations; and

    c. a list of witnesses containing the names, positions, and phone numbers for each witness.

55. As a result of the continued harassment, Plaintiff began experiencing symptoms of anxiety and depression.

56. Four days later, on or about August 20, 2019, Plaintiff sought treatment from Brevard Family Walk-in Clinic for a disability.

57. Plaintiff was ultimately diagnosed with a disability: anxiety, post-traumatic stress disorder ("PTSD"), and reactive depression caused from stress at work.

58. As a result of Plaintiff's disability, Plaintiff suffers from the following symptoms:

    a. extreme fatigue;

    b. trouble focusing and concentrating;

    c. anger, irritability and frustration;

    d. loss of interest in pleasurable and fun activities;

    e. lack of energy;

    f. severe and crippling panic attacks; and

       g. loss of appetite.

59. Plaintiff's disability substantially limits the following major life activities:

       a. obtaining restful, meaningful sleep;

       b. effectively utilizing problem-solving and time management skills;

       c. effectively performing manual tasks;

       d. leaving her home and spending time in public;

       e. interacting with others;

       f. maintaining meaningful and healthy relationships;

       g. exercising and otherwise enjoying healthy activities; and

       h. maintaining a healthy diet.

60. Plaintiff's diagnosed PTSD, anxiety, and depression required her to seek continuing treatment by healthcare providers.

61. Through Defendant's leave administrator, the Hartford, Plaintiff requested short-term disability benefits and medical leave under the Family and Medical Leave Act of 1993 (FMLA) from August 20, 2019 through December 1, 2019.

62. Defendant granted Plaintiff's initial FMLA leave request.

63. On or about Friday, August 23, 2019, news broke that the Plaintiff was on administrative leave for—among other things—panic attacks induced by Mr. Horn's severe and pervasive harassment, and Mr. Horn used a co-worker's cell phone to contact the Plaintiff, identifying himself by saying "it's your panic attack" and calling her a "stupid bitch."

64. On or about November 28, 2019, while the Plaintiff was still on FMLA leave, Ms. Hornsby contacted the Plaintiff, advising that she was released to return to work on December 2, 2019.

65. Plaintiff advised that she had an appointment with her physician on December 2, that HR had provided the Plaintiff with a form that needed to be completed by a doctor prior to Plaintiff returning to work, and December 2, 2019, would be the earliest Plaintiff could see a doctor to get the form filled out.

66. Accordingly, Plaintiff unambiguously stated she would not be able to return to work December 2, 2019.

67. December 2, 2019, Plaintiff saw her doctor as scheduled and was advised that she was not cleared to return to work.

68. Plaintiff's doctor recommended a finite leave extension through January 31, 2020.

69. Plaintiff immediately submitted to the Defendant, care of Christy Britton, a reasonable accommodation request for a finite leave extension through January 31, 2020.

70. Ms. Britton advised Plaintiff she needed to secure and complete (or have completed) the appropriate forms through the Hartford.

71. Accordingly, December 2, 2019, that same day, Plaintiff contacted the Hartford and requested the appropriate documentation to extend her leave be sent to her medical provider.

72. December 5, 2019, Plaintiff followed up with her medical provider, inquiring as to whether it received the leave extension paperwork from the Hartford.

73. Plaintiff's medical provider advised that the Hartford had not provided any documentation.

74. Accordingly, December 12, 2019, at 1:09 pm, Plaintiff reached back out to Ms. Britton with the following correspondence:

> Hi Christy, I have updated my contact information along with my providers information with The Hartford, I requested two appointment phone calls with them as well, I have not received any paperwork from them nor has my provider. I never received the scheduled calls that I requested with my claims analyst, I submitted my providers address and fax number several times.
> Thank you
> Melanie Clanton O'Bryan

75. Exactly nineteen minutes later, at 1:28 pm, December 12, 2019, Ms. Britton responded to the Plaintiff by attaching a letter of termination, which states in part:

> This decision is based on the fact that all leaves available to you have been exhausted and it does not appear that an additional period of brief and definitive leave would allow you to return to work and perform the essential functions of your position.

76. In direct conflict with the representation above, the following day, December 13, 2019, the Hartford reached out to the Plaintiff regarding the processing of the Plaintiff's ADA accommodation request for additional leave.

77. Accordingly, Defendant neither considered Plaintiff's reasonable request for an accommodation nor engaged in the interactive process prior to terminating the Plaintiff.

78. Plaintiff's request would not have constituted an undue hardship for the Defendant, who is a national retailer boasting nearly 2,000 stores nationwide and multitude of employees who could have covered for the Plaintiff while she was on leave.

79. Had the Defendant granted Plaintiff's reasonable accommodation request and provided a suitable work environment, Plaintiff would have been able to perform the essential functions of her job upon her return.

80. Plaintiff could perform the essential functions of her job. This was demonstrated by more than five years of excellent performance, including more than two years as an assistant store manager.

81. Plaintiff has been extensively damaged by Defendant's illegal conduct.

82. Plaintiff has retained the services of undersigned counsel and has agreed to pay said counsel reasonable attorneys' fees.

### Count I: Hostile Work Environment in Violation of Title VII

83. Plaintiff re-alleges and adopts, as it fully sets forth herein, the allegations stated in Paragraphs 1-82 above.

84. As a female, Plaintiff's sex made her a member of a protected category under Title VII.

85. Defendant knowingly and with reckless disregard, subjected Plaintiff to unwelcomed sexual harassment.

86. Defendant's harassment of Plaintiff was because of her sex, female.

87. As described in detail above, Defendant's harassment of Plaintiff was sufficiently severe or pervasive to create an abusive environment and alter the terms of her employment.

88. Defendant knew or should have known of the discriminatory conduct because Plaintiff repeatedly reported the conduct over the course of approximately one year.

89. Defendant failed to remedy the discriminatory conduct, and Plaintiff was still required to work with her harasser until she had a breakdown and sought protected medical leave.

90. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the Title VII, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, post-traumatic stress, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

91. The discrimination that Plaintiff suffered, in violation of her federal statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

92.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

## Count II: Retaliation in Violation of the Title VII

93.     Plaintiff re-alleges and adopts, as it fully sets forth herein, the allegations stated in Paragraphs 1-82 above.

94.     As set forth in detail above, Plaintiff engaged in protected activity under Title VII while employed by Defendant by repeatedly reporting sexual harassment, sex-based discrimination, and retaliation to management.

95.     Defendant failed to make a good faith inquiry into the Plaintiff's complaint and instead intentionally retaliated against Plaintiff for engaging in protected activity under Title VII by failing to take remedial action, continuing to subject Plaintiff to a hostile environment, and terminating Plaintiff's employment.

96.     Defendant's discriminatory conduct in violation of the Title VII has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

97.     Defendant's actions have caused Plaintiff to suffer severe mental and emotional distress, entitling her to compensatory damages.

98.     Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages.

99.     Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

### Count III: Sex Discrimination in Violation of Title VII

100. Plaintiff re-alleges and adopts, as it fully sets forth herein, the allegations stated in Paragraphs 1-82 above.

101. Defendant's treatment of Plaintiff resulting in her termination, as more particularly alleged above, was motivated by Plaintiff's sex, and thus, violated Plaintiff's rights under Title VII of the Civil Rights Act of 1964.

102. As a direct natural, proximate and foreseeable result of Defendant's actions, Plaintiff has suffered lost wages and benefits, in the past and such losses will continue into the future, she has suffered severe emotional distress, inconvenience, embarrassment and other non-pecuniary damages and such damages will continue in the future.

103. Defendant's conduct towards Plaintiff was willful, wanton and in flagrant disregard of her federally protected rights against sex discrimination so as to justify punitive damages.

104. The discrimination that Plaintiff suffered, in violation of her state and federal statutory rights to be free from such discrimination, constitutes irreparable harm for which there is no adequate remedy at law.

105. Plaintiff is entitled to recover reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 2000e-5(k).

### Count IV: Disability Discrimination in Violation of the ADA

106. Plaintiff re-alleges and adopts, as it fully sets forth herein, the allegations stated in Paragraphs 1-82 above.

107. Defendant is prohibited under the ADA from discriminating against Plaintiff because of Plaintiff's medical condition regarding discharge, employee compensation, and other terms, conditions, and privileges of employment.

108. Defendant violated the ADA by unlawfully terminating and discriminating against Plaintiff based on her disability.

109. Defendant intentionally discriminated against Plaintiff based on her disability. In fact, Defendant literally responded to Plaintiff's request for a reasonable accommodation under the ADA by sending her a letter of termination.

110. As a direct and proximate result of Defendant's unlawful and discriminatory conduct in violation of the ADA, Plaintiff has suffered and continues to suffer, lost wages, lost benefits, as well as severe mental anguish and emotional distress, including but not limited to depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering, for which she is entitled to an award of monetary damages and other relief.

111. Defendant's unlawful conduct in violation of the ADA is outrageous and malicious, intended to injure Plaintiff, and has been done with conscious disregard of Plaintiff's civil rights, entitling her to an award of exemplary and/or punitive damages.

### Count V: Failure to Accommodate in Violation of the ADA

112. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-82 above.

113. Plaintiff is a disabled person as defined by the ADA in that she has an actual disability, has a record of being disabled, and/or was perceived as being disabled by Defendant.

114. Plaintiff requested a reasonable accommodation when she requested additional leave.

115. Defendant failed to engage in the interactive process and failed to accommodate Plaintiff as required by the ADA.

116. Plaintiff's accommodation would not have created an undue hardship on Defendant.

117. Plaintiff would have been able to perform the essential duties of her job with the requested reasonable accommodation.

118. As a result of the foregoing, Plaintiff was injured by having her career significantly and adversely impacted; forgoing compensation and benefits; and enduring embarrassment, mental anguish and emotional distress.

### Count VI: Retaliation in Violation of the ADA

119. Plaintiff re-alleges and adopts, as if fully set forth herein, the allegations stated in Paragraphs 1-82 above.

120. Plaintiff engaged in protected activity under the ADA while employed by Defendant by requesting an extension to her leave due to her disability.

121. Defendant intentionally retaliated against Plaintiff for engaging in protected activity under the ADA by terminating Plaintiff's employment.

122. Defendant's conduct violated the ADA.

123. Defendant's discriminatory conduct in violation of the ADA has caused Plaintiff to suffer a loss of pay, benefits, and prestige for which she is entitled to damages.

124. Defendant's actions have caused Plaintiff to suffer mental and emotional distress, entitling her to compensatory damages.

125. Defendant has engaged in discriminatory practices with malice and reckless indifference to Plaintiff's federally protected rights, thereby entitling her to punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, requests this Honorable Court:

a) Enter judgment requiring Defendant to pay back wages and back benefits found to be due and owing at the time of trial, front-pay, compensatory damages, including emotional distress damages, in an amount to be proved at trial, punitive damages, liquidated damages, and prejudgment interest thereon;

b) Grant Plaintiff costs and an award of reasonable attorneys' fees (including expert fees); and

c) Award any other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all triable issues herein.

Respectfully Submitted:

> THE EMPLOYMENT LAWYERS, P.L.L.C.
> 1201 6th Ave W., A336
> Bradenton, FL 34205
> Tel: 813-400-9756
> andrew@theemploymentlawyerspllc.com
> service@theemploymentlawyerspllc.com
> Attorney for Plaintiff
>
> By:   /s/  Andrew J. Pouget
>  Andrew Pouget, Esq.
>  FBN: 1013551